UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-14767-GAO

WILLIE WALLACE,
Plaintiff,

v.

FRANK COUSINS, JR., MICHAEL MARKS, HEATH CARAFA, GREG TURNER, DAVID
FORTUNE, SERGEANT LANE, SEGREGATION OFFICER # 1, SEGREGATION OFFICER
# 2, AMY GORDON, JANICE HALL, JANE DOE # 1, and JANE DOE # 2,
Defendants.

OPINION AND ORDER
February 8, 2017

O'TOOLE, D.J.

The plaintiff, Willie Wallace, acting *pro se*, has brought a number of claims against various

correctional officers and nurses at the Essex County Correctional Facility ("ECCF").[1] His claims

stem from what the plaintiff alleges was inadequate treatment of his toothache in October 2014.[2]

---

[1] This Court's November 10, 2015, Memorandum and Order (dkt. no. 15) listed the remaining
parties. The remaining ECCF defendants are Frank Cousins, Jr., Michael Marks, Heath Carafa,
Greg Turner, David Fortune, Sergeant Lane (first name unspecified), and two unnamed
segregation officers. The remaining nursing staff defendants are Amy Gordon, Janice Hall, and
two additional unnamed nurses.

[2] The plaintiff has not filed proof of service as to defendant Gordon pursuant to this Court's June
2, 2016, order (dkt. no. 49). She is therefore not a party to this action. He filed a proof of service
on "Nurse Katlyn," although no person by that name is mentioned in the complaint. Presumably
she is either Jane Doe # 1 or # 2. The only allegations against those two nurses are that on separate
occasions each gave him Motrin, the suggestion apparently being that they should have done more.
Without more, the plaintiff has clearly not stated a claim against either, and they are both entitled
to have the complaint dismissed as against them.

## I.     Facts

The facts presented in the operative pleadings[3] are relatively sparse, but the following is fairly alleged: The plaintiff was admitted to ECCF on September 25, 2014, as a pretrial detainee and complained of a painful toothache. The plaintiff submitted a number of sick call slips to a nurse and was given Motrin for the pain. On October 6,[4] the plaintiff filed additional sick call slips and two medical grievances, to which Amy Gordon, the chief administrator of the contracted healthcare provider, responded.[5]

On October 6, the plaintiff, experiencing excruciating pain, spoke to Sergeant Greg Turner, who arranged for the plaintiff to talk to a nurse who was dispensing medicine in the medicine line. That nurse also gave the plaintiff Motrin. The plaintiff alleges that, at the time, there was "visible swelling" on his face. (Am. Compl. ¶ 24 (dkt. no. 8).) Turner denied the plaintiff's further request to go to the infirmary.

Three hours later, the plaintiff again approached Turner and collapsed on the ground from the pain. Turner allegedly kicked the plaintiff in an attempt to get him to rise and allowed 50 to 60 inmates to step over him. Turner and Sergeant Lane picked the plaintiff up and brought him to the infirmary. There, Nurse Janice Hall told the officers that "there was no severity in [the p]laintiff's medical situation," despite the plaintiff's "swollen face and cries of pain." (Am. Compl. ¶ 31.)

The plaintiff alleges that for this incident, Turner wrote a disciplinary report for faking a medical injury and Lane found him guilty without reviewing evidence.

---

[3] The November 10 order deemed the plaintiff's Amended Complaint (dkt. no. 8), Claims for False Disciplinary Procedures (dkt. no. 10), and the Opposition to Dismissal of Defendants (dkt. no. 11) as the operative pleadings.

[4] There are no allegations of relevant facts between September 25 and October 6.

[5] At least one of these grievance forms appears to be attached to the plaintiff's original complaint. In it, Gordon responded that Wallace was "scheduled for October 13 to see the dentist." (Compl., Ex. A, at 1 (dkt. no. 1-2).)

Later that day, the plaintiff alleges, Lieutenant Heath Carafa entered the plaintiff's room, insulted him, called him a racial slur, wrote "a false disciplinary report" after ordering the plaintiff to get off his bunk, and escorted the plaintiff to the segregation unit. (Am. Compl. ¶¶ 36–39.) During this time, the plaintiff was in severe pain and could not move or speak. The plaintiff alleges that Lieutenant David Fortune did not afford the plaintiff an adequate disciplinary hearing with respect to Carafa's report. The plaintiff appealed both disciplinary reports to Superintendent Michael Marks, who denied the appeals.

During the night in the segregation unit, the two unnamed segregation officers refused to provide the plaintiff medical attention or give him a grievance form.

In the morning on the next day, an officer saw an abnormally large bump on the plaintiff's face and rushed him to the infirmary. The plaintiff was then transferred to a hospital, where he apparently received treatment for his condition.

## II.    Discussion

The various named ECCF employee defendants have moved to dismiss the claims against them. The plaintiff has not filed a formal opposition to the motion. Hall, a member of the nursing staff, has separately moved to dismiss the claims against her. The plaintiff has opposed that motion.

To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint "stops short of the line between possibility and plausibility" where it "pleads facts that are 'merely consistent with' a defendant's liability." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). The factual content of the complaint must allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

As to Cousins and Marks, no relevant acts or omissions are alleged. To make out a viable claim under 42 U.S.C. § 1983, a plaintiff must prove that the defendant in question personally participated in the complained of actions or inaction. See Vélez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (citing Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)). Merely alleging that a defendant served in a supervisory role is by itself insufficient. See id. ("A plaintiff must show an affirmative link between the subordinate officer and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization." (citation omitted)). Other than Marks's denial of the plaintiff's appeals (for which the pleadings provide no detail permitting evaluation of the reasons for the denial),[6] Cousins and Marks are not alleged to be involved in any personal way in the incidents described in the complaint. The claims against them must be dismissed.

The remaining § 1983 claims against the other defendants break down into three groups: deliberate indifference to serious medical needs, use of excessive force, and false and improper disciplinary proceedings.

A.    Deliberate Indifference to Serious Medical Needs

Correctional officials violate the Eighth Amendment prohibition of cruel and unusual punishment of prisoners if their "acts or omissions [are] sufficiently harmful to evidence deliberate indifference to serious medical needs." Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 (1st Cir. 2011) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (alteration in original). The same

---

[6] The appeal decision the plaintiff attached to his original complaint indicates that Marks suspended the plaintiff's remaining punitive time in the segregation unit, a disposition favorable to the plaintiff.

standard applies to pretrial detainees by reason of the Due Process Clause of the Fourteenth Amendment. Ruiz-Rosa v. Rullan, 485 F.3d 150, 155 (1st Cir. 2007) (citing Burrell v. Hampshire Cnty., 307 F.3d 1, 7 (1st Cir. 2002).

To establish liability for deliberate indifference to serious medical needs, a plaintiff must prove that the official subjectively "possessed a sufficiently culpable state of mind"—that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Leavitt, 645 F.3d at 497 (citations omitted). A plaintiff must also show that the alleged risk or harm was "objectively, sufficiently serious." Id. (citation omitted). "Deliberate indifference in this context may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with actual knowledge of impending harm, easily preventable." Ruiz-Rosa, 485 F.3d at 156 (citation and internal quotation mark omitted). "[S]ubstandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation." Id.

The plaintiff's allegations fail to support a plausible inference that the correctional officers, both those named in his papers and others unnamed, denied him needed medical care as a punishment or acted recklessly in the face of knowledge of imminent harm. In the course of the two day period that is the focus of the complaint, the officers did arrange for Wallace to be seen and treated by medical staff.

Nor has the plaintiff pled sufficient facts to state a claim for deliberate indifference as to Nurse Hall. The plaintiff's allegations fail to support a plausible inference that she acted with the subjective intent to punish the plaintiff, or with wanton disregard for his medical needs. The plaintiff asserts only that she told officers that the plaintiff's medical situation was not severe, and

that she did not correctly assess the seriousness of his medical condition or provide adequate medical treatment for it. No facts are alleged to support a plausible inference that she was doing anything other than exercising medical judgment. She may have been negligent, but "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981) (citing Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

In light of the foregoing, the plaintiff's deliberate indifference allegations do not meet the pleading standard set forth in Iqbal, which requires a plaintiff to plead supporting "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

B.    Excessive Force

The only allegation of excessive force is the plaintiff's claim that Turner kicked him after the plaintiff collapsed on the floor. Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment from the use of excessive force that amounts to punishment. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015). To prevail on an excessive force claim, the plaintiff must show that the force purposely or knowingly used against him was objectively unreasonable. Id.

Plaintiff alleges:

> Plaintiff 3 hours later reproached Sgt. Turner and at this point Plaintiff collapsed to the ground because [of] the unbearable pain. While on the ground in excruciating pain Sgt. Turner kicked the plaintiff demanding that plaintiff rise to his feet. No medical emergency was radioed in and while still on the ground Sgt. Turner allowed 50 to 60 other inmates to step over the Plaintiff. Plaintiff was the[n] picked up by Sgt. Lane and Plaintiff was escorted by Sgt. Turner to the infirmary.

(Am. Compl. ¶¶ 27–30 (paragraph numbering omitted).)

The complaint includes no allegations of injury from the kick and no discussion of the degree of force used. The plaintiff's complaint even suggests a non-malicious reason for the kick: to have the plaintiff rise to his feet. The complaint fails to plausibly allege that the kick was anything other than "a good-faith effort to maintain or restore discipline." See Hudson v. McMillian, 503 U.S. 1, 6–7 (1992). This claim is dismissed.

C. False Disciplinary Reports, Inadequate Disciplinary Hearings, and Intentional Infliction of Emotional Distress

The plaintiff alleges that Turner and Carafa issued false disciplinary reports in retaliation for the plaintiff's various grievances concerning his medical treatment. He also alleges that he was not afforded a proper disciplinary hearing. The only sanction he specifies he received was additional time in segregation. He argues that these actions violate his constitutional right to due process and that the filing of the false reports constitutes intentional infliction of emotional distress under state law.

The plaintiff's pleadings fail to include sufficient factual allegations concerning this claim to meet the standard set forth in Twombly and Iqbal. For example, the plaintiff states that he "was not allowed to call witnesses, present evidence, or granted a hearing within the Wolf[f] v. Mc[D]onnell[, 418 U.S. 539 (1974)] dictates." (Claims for False Disciplinary Procedures at 2 (dkt. no. 10).) However, he never describes how the disciplinary process was not "within the dictates" of Wolff. Conclusory allegations are insufficient to support his disciplinary hearing claim. See Iqbal, 556 U.S. at 678 ("[Courts] are not bound to accept as true a legal conclusion couched as a factual allegation." (citation omitted)).

The failure of the plaintiff's claims for inadequate disciplinary hearing procedures is fatal to his constitutional claims on the allegedly false disciplinary reports as well. To the extent that a

false disciplinary report impinges upon an inmate's due process rights, those rights are protected by the disciplinary hearing itself. See Orwat v. Maloney, 360 F. Supp. 2d 146, 157–58 (D. Mass. 2005).

Finally, I decline to exercise supplemental jurisdiction over any remaining state law claims, including the claim for intentional infliction of emotional distress. See 28 U.S.C. § 1367(c)(3).

## III.  Conclusion

The pending motions to dismiss (dkt. nos. 39, 41) are GRANTED, and the federal claims in the plaintiff's pleadings are dismissed with prejudice. Any state law claims, including the claim for intentional infliction of emotional distress, are dismissed without prejudice.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge